UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEVONNA WILKINS, on behalf of HERSELF and all others similarly situated,<br><br>vs.<br><br>JUST ENERGY GROUP INC., JUST ENERGY ILLINOIS CORP., COMMERCE ENERGY, INC., and JUST ENERGY MARKETING CORP., Foreign corporations<br><br>Defendants. | Case No. 1:13-cv-05806 |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiff, by her undersigned attorneys, as and for her Complaint, alleges as follows:

**NATURE OF ACTION AND PARTIES**

1. Plaintiff brings this class action for unpaid wages earned, monetary damages, liquidated damages, declaratory and injunctive relief and other equitable and ancillary relief pursuant to the Illinois Minimum Wage Law, 820 ILCS §105 *et. seq.* This action is brought as a state-wide class action under Fed. R. Civ. P. 23(b)(3).

2. Plaintiff Levonna Wilkins was employed by Defendants to go door to door with the objective of getting potential customers to apply for Defendants' and/or their affiliates' services. Defendants implemented a common scheme whereby Plaintiff was not paid for all hours worked, did not receive the applicable minimum wage, and was not paid overtime for hours worked in excess of forty hours in a given workweek, in violation of the Illinois Minimum Wage Law, 820 ILCS §105 *et. seq.*

1

3. Defendants accomplished this by wrongly classifying Plaintiff and others as independent contractors and/or exempt outside salespersons when in fact they were non-exempt employees. In so doing, Defendants did not pay Plaintiff and other similarly situated persons the applicable minimum wages and, although they were routinely required to work more than 40 hours per week, Plaintiff and other similarly situated persons were not paid overtime.

4. The similarly situated individuals whom the Plaintiff seeks to represent are comprised of those persons working for Just Energy (collectively the Defendants herein are referred to as Defendants or "Just Energy") going door to door to do with the objective of getting potential customers to apply for Defendants' and/or their affiliates' services. Defendants knowingly and willfully failed to pay their wages in accordance with applicable federal and state laws, including but not limited to minimum wage and overtime wages. The Plaintiff seeks redress on behalf of herself and all others similarly situated.

5. Upon information and belief, at all times hereinafter mentioned, Defendant Just Energy was and still is a foreign corporation headquartered in Ontario, Canada doing business in Illinois.

6. Upon information and belief, at all times hereinafter mentioned, Defendant Commerce Energy, Inc. is a subsidiary of Just Energy doing business in Illinois.

7. Upon information and belief, at all times hereinafter mentioned, Defendant Just Energy Illinois Corp. is a subsidiary of Just Energy doing business in Illinois.

8. Upon information and belief, at all times hereinafter mentioned, Defendant, Just Energy Marketing Corp. is a subsidiary of Just Energy doing business in Illinois.

9. Just Energy markets gas and electricity to residential and commercial customers in Illinois, certain other states, and certain Canadian provinces through its wholly owned

subsidiaries. Defendants' business primarily involves the marketing and sale of natural gas and/or electricity supply to residential and commercial customers under long term fixed price, price-protected or variable-priced contracts and green energy products.

## JURISDICTION AND VENUE

10. Jurisdiction in this case is based on 28 U.S.C. §1332 in that it involves a putative class action, minimum diversity exists in that the named plaintiff is a resident of Illinois and the Defendants are citizens of a foreign state and, on information and belief, the amount in controversy exceeds $5,000,000.

11. The Court has personal jurisdiction over Defendants pursuant to Federal Rule 4 (k)(1), in that the Defendants have sufficient contact with the state of Illinois as it conducted business within the state.

12. Upon information and belief, additional facts supporting personal jurisdiction are as follows:

a.) Defendants take an active role in managing Just Energy's regional offices in Illinois.

b.) Defendants participate in administration and management of marketing efforts in Illinois, including but not limited to, establishing procedures, policies, and rules for Plaintiff and the putative class members to follow.

c.) Defendants assist with staffing those in Plaintiff's and the putative class members' position in Illinois'' regional offices.

d.) Defendants provide vehicles used to transport workers in Plaintiff's and the putative class members' position.

e.) Defendants maintain employment and other records for those Illinois workers in Plaintiff's and the putative class members' position.

f.) Defendants provide Illinois distributors proprietary information which relates to the work Illinois workers in Plaintiff's and the putative class members' position perform.

g.) Defendants' management of marketing efforts and maintenance of regional offices in Illinois caused Plaintiffs to be deprived of overtime and minimum wage, creating the basis for this lawsuit.

h.) Plaintiff is unaware of any facts that in any way suggest that Defendant will not be able to defend itself in this jurisdiction. While Defendants are foreign corporations, Defendants have significant resources, and are defending a similar lawsuit in a foreign jurisdiction, Ohio.

i.) Illinois has a legitimate interest in protecting Illinois workers against exploitative employment practices.

13. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c).

## GENERAL ALLEGATIONS

14. Ms. Wilkins brings this action as a class action for all persons who at any point in the last 3 years were (a) Illinois residents, (b) were listed on their Just Energy contract as performing services for Just Energy; (c) were treated as independent contractors; (d) had the job of going door-to-door for Just Energy; and (e) were not paid minimum wage and/or overtime. (Hereinafter these persons shall be referred to as "putative class members").

## FACTS COMMON TO ALL CLAIMS

15. Plaintiff and the putative class members do not have a contract to perform work for the Defendants for a set period of time.

16. Plaintiff and the putative class members have the ability to work for Defendants indefinitely, subject to Plaintiff's and the putative class members' right to resign and Defendants' right to terminate them.

17. Plaintiff and the putative class members worked for Defendants going door-to-door with the objective of getting potential customers to apply for Defendants' and/or their affiliates' services.

18. The work performed by Plaintiff and the putative class members is the primary way in which Defendants get customers to apply for their and/or their affiliates' services.

19. At or around the time of hiring, Defendants trained Plaintiff and the putative class members on the business of Just Energy, the procedures to follow in presenting the Just Energy program to potential customers, and the requirements to comply with in performing their job duties. Plaintiff and the putative class members were given a written script to use when meeting with the customers.

20. Plaintiff and the putative class members must adhere to specific company rules when meeting with potential customers. Plaintiff and the putative class members are reprimanded by Defendants if there are customer complaints or other issues with the performance of their jobs.

21. During the majority of the weeks of their employment, Plaintiff worked at least 9 am to 9 pm 6 days per week. Putative class members were required by Defendants to work the same and/or similar schedule which was fixed by Just Energy and not controlled by the workers.

22. Defendants required Plaintiff to wear Just Energy badges when visiting the houses each day they worked. Defendants expected the putative class members to do the same.

23. Defendants provided Plaintiff a standard uniform to wear which consisted of a hat bearing the Just Energy logo, a shirt also with the Just Energy logo, and a jacket with the Just Energy logo (during the winter months) when visiting households to make the Just Energy presentation. Defendants expected the putative class members to wear the same and/or similar uniforms.

24. Defendants decide the geographic area or territory in which Plaintiff and the putative class members will work in a given day and/or week.

25. On a typical day, Defendants directed Plaintiff and the putative class members to come to the Just Energy office every morning. At that time, presentations about Just Energy and presenting the Just Energy products, including sales role-playing, were given to the workers. The Defendants then assigned specific geographic areas for Plaintiff and the putative class members to solicit potential customers. Just Energy would then transport Plaintiff and/or other putative class members to their territory and back to the office at the end of the shift, or if the shift involved overnight road trips, at the end of the trip. This transporting was often done in a Just Energy company van.

26. Plaintiff and the putative class members are still limited to working only within geographic areas the Defendants permit, either traveling with the group or getting specific permission to work in some other area.

27. The named Plaintiff and the putative class members do not have the skills, nor do they have access to the internal Just Energy information, to determine which areas are selected for marketing. For example, they do not know which areas were recently marketed by other Just Energy teams; which areas were recently marketed by competitors; and, other than being told by Just Energy, which areas may lawfully be canvassed by Just Energy.

28. When Plaintiff and the putative class members go to a potential customer's door, they are to only use materials created by Defendants – a company brochure and a customer application. Defendants required Plaintiff and the putative class members to present these items to the potential customer.

29. Plaintiff and the putative class members do not actually sell any of the Defendants' and/or their affiliates' services.

30. Plaintiff and the putative class members have no contact with the potential customer after the application is signed.

31. The sole fact that the potential customer signed the application does not entitle the potential customer to Defendants' service.

32. The sale is not complete until four things occur: First, Defendants (through workers other than Plaintiff and the putative class members) speak with each potential customer who signed the application and require the potential customer to go through a phone verification process. Second, the Defendants require the Plaintiff and the putative class members to submit the signed application to the regional Just Energy office for review to ensure that all the required information is complete. Third, the Defendants send the completed application to Just Energy's Head Office for processing. And fourth, the utility company (whom Defendants contract with to provide the service to the potential customer) must approve the potential customer for Defendants' discount program. There are a myriad of reasons outside the control of the Plaintiff and the putative class members as to why a sale might not occur. Finally, even if all four items are satisfied, Just Energy retains the sole discretion to reject any signed application.

33. If any of the above requirements do not occur, or Just Energy decides to reject the contract, Defendants will not provide the customer its service and similarly, a potential customer is not bound to buy Defendants' service.

34. As a result of the pre-requisites needed for a customer to obtain Defendants' service, Plaintiff and the putative class members can never complete the sale to the potential customer at the time they meet with the potential customer and have them sign the application.

35. Not all potential customers that fill out an application satisfy the pre-requisites to obtain Defendants' service.

36. For each potential customer who does satisfy all requirements to obtain Defendants' service (i.e. signs the contract, completes the verification process, and is approved by the gas and/or electric company), Plaintiff receive $35 in payment from Defendants, similar to the putative class members who likewise receive $35 or some other similar fixed amount.

37. Plaintiff and the putative class members are then supposed to receive an additional $15 (or similar amount) once the potential customer pays his or her first month's utility bill.

38. Plaintiff and the putative class members were also to receive a one-time $500 (or similar amount) bonus after twenty (or a similar number) of the potential customers they signed up met the pre-requisites and became Defendants' customers.

39. As a result of Defendants' method of compensating Plaintiff and the putative class members, Plaintiff and the putative class members have not always been paid minimum wage for all hours worked in a given week, and in some weeks have not received any pay. In fact, during the time that Plaintiff worked for the Defendants, she never made even minimum wage.

40. Plaintiff and the putative class members also never received any overtime pay for the hours they worked over 40 hours per week. Plaintiff and the putative class members were always only paid $35 and/or another set amount for each of the customers who ultimately purchased Defendants' service.

41. The exact amounts that Plaintiff's pay and the putative class members' pay was below minimum wage and/or were paid less that 1 ½ their regular pay for their overtime compensation in each given week during their employment can be determined in part by Defendants' pay records, which Plaintiff will request during discovery.

42. Plaintiff and the putative class members were employees with Defendants.

43. Plaintiff and the putative class members were "non-exempt" employees under the state and federal wage and hour law, as nothing about their pay, title, duties, or anything else qualifies them for any exemption under state or federal law.

44. Non-exempt employees are entitled to a minimum wage for all hours worked and for overtime wages for all hours worked over 40 per week.

45. Plaintiff and the putative were not paid for all hours worked and were not paid overtime wages for the hours they worked over 40 per week.

### STATE-WIDE CLASS ALLEGATIONS PURSUANT TO ILLINOIS WAGE AND HOUR AND <u>WAGE PAYMENT LAWS</u>

46. Plaintiff also seeks to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of herself individually and on behalf of all other members of the Class who, during the relevant statute of limitations period, have worked for Defendants and who have been aggrieved, with respect to the claims plead in this Complaint.

47. Fed. R. Civ. P. 23(b)(3) provides that a cause of action may be maintained as a class action if:

a) The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b) There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

c) The claims or defenses of the representative parties are typical of the claims or defenses to the class;

d) The representative parties will fairly and adequately protect the interests of the class; and,

e) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## Class Definitions

48. Plaintiff seeks certification of the following class: all persons who at any point in the last 3 years were (a) Illinois residents, (b) listed on their Just Energy contract as performing services for Just Energy; (c) treated as independent contractors; (d) had the job of going door-to-door for Just Energy; and (e) not paid minimum wage and/or overtime.

## Numerosity

49. Plaintiff satisfies the numerosity requirements as the proposed classes consist of potentially hundreds of class members. The proposed classes include all persons employed by Defendants in Illinois who worked door-to-door for Defendants and who were not paid minimum wages and overtime wages. Since Defendants has numerous employees that were injured by Defendants' actions, the class will likely include more than 75 members. The proposed class can be identified and located using Defendants' payroll and personnel records. Therefore, the class is so numerous that the joinder of all members is impracticable. Class members may be informed of the pendency of this action by direct mail based upon and/or published and broadcast notice.

**Common Questions of Fact or Law**

50. There are questions of fact and law common to each class that predominate over any questions affecting only individual members. The common questions of law and fact arising from Defendants' actions include, without limitation, the following:

    a) Whether the class members have been misclassified as independent contractors;

    b) Whether class members share similar job duties;

    c) Whether Defendants paid class members for all hours worked;

    d) Whether Defendants paid Class members overtime;

    e) Whether Plaintiff and the Class regularly worked in excess of 40 hours per week;

    f) Whether Defendants' practices violated the overtime and minimum wage provisions of the Illinois Wage and Hour Laws; and

51. The questions set forth above predominate over any questions affecting only individual persons and a class action is superior with respect to consideration of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the controversy.

**Typicality**

52. Plaintiff's claims are typical of the claims of the members of Class. Plaintiff suffered similar injuries as those suffered by other members of the Class she seeks to represent as a result of Defendants' illegal activities as described herein.

**Adequacy**

53. Plaintiff is an adequate representative of the class she seeks to represent because she is a member of the class, and her interests do not conflict with the interests of the members of the class she seeks to represent. The interests of the class members will be fairly and adequately

protected by the Plaintiff and her designated counsel. Plaintiff has hired competent attorneys who are experienced in class-action litigation of this type and who are committed to prosecuting this action.

### **Superiority**

54. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class-action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member may be relatively small, the expense and burden of individual litigation would make it difficult to bring individual claims. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair, or impede the ability of class members to protect their interests.

### COUNT I
### VIOLATION OF THE ILLINOIS WAGE HOUR LAWS
### FAILURE TO PAY MINIMUM WAGES

55. Plaintiff repeats and re-alleges the allegations set forth in each of the paragraphs above.

56. The members of the Class were entitled to minimum wages for the work they performed for Defendants.

57. Defendants failed to pay the members of the Class such owed minimum wages, in violation of Illinois' Minimum Wage Law, 820 ILCS §105/1 et seq.

58. Illinois' Minimum Wage Law, 820 ILCS §105/3, defines an employer as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." Defendants meet this definition of an employer pursuant to the Illinois statute. Upon information and belief, facts in support of Defendants as Plaintiff's and the putative class members' employer are as follows:

a.) Defendants, and or at least one of them, engage in the following activities related to Plaintiffs and the putative class members. Further, Defendants' relations and interconnection with one another, and specifically as it relates to the conduct below involving Plaintiff and the putative class members, subjects them to joint-employer liability.

b.) Defendants are responsible or making all labor relations policy decisions for Plaintiff and the putative class members;

b.) Defendants determine the manner in which Plaintiff and the putative class members are compensated;

c.) Defendants impose various procedures and rules that Plaintiff and the putative class members must follow in their jobs, including but not limited to, hours Defendant expected them to work, uniforms they must wear, and geographic areas they are to work in.

d.) Defendants subject Plaintiff and the putative class members to the terms of its Code of Business Conduct and Ethics Policy and its comprehensive orientation manuals.

e.) Defendants provide vans used by Plaintiff and the putative class members in performance of their work;

f.) Defendants review and process weekly completed registration forms obtained by Plaintiff and putative class members in the performance of their work;

13

g.) Defendants maintain a centralized recruiting office, which is tasked with, among other things, the creation of form advertisements designed for utilization as recruitment tools for those in Plaintiff's and the putative class member's position.

59. By the above-alleged conduct, Defendants failed to pay the members of the Class compensation, including minimum wages, as required by the Illinois law.

60. The members of Class were not exempt from the payment of these wages pursuant to Illinois wage hour laws.

**COUNT II**
**VIOLATION OF THE ILLINOIS WAGE HOUR LAWS**
**FAILURE TO PAY OVERTIME WAGES**

61. Plaintiffs reassert and re-allege the allegations set forth in each of the paragraphs above.

62. The Illinois Minimum Wage Act provides that unless exempt, an employee must be paid by an employer overtime wages equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 per week. Plaintiffs and the Class were not exempt. 820 ILCS §105/1, *et seq.*

63. Illinois' Minimum Wage Law 820 ILCS §105/3 defines an employer as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." As such, Defendants meet the definition of an employer pursuant to the Illinois statute.

64. By the above-alleged conduct, Defendants failed to pay the members of Class compensation, including overtime compensation, as required by the Illinois law.

65. The members of Class were not exempt from the payment of these wages pursuant to Illinois wage hour laws.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

1. Award all actual damages suffered by Plaintiff and the Class;

2. Order the disgorgement of all monies improperly obtained by Defendants;

3. Enter an order declaring that the Defendants willfully violated the minimum wage and overtime provisions of the Illinois Minimum Wage Law;

4. Award Plaintiff and the Class damages in the amount of minimum wages, overtime wages, required by the Illinois Minimum Wage Law improperly denied them by the Defendants' actions;

5. Award Plaintiff and the Class liquidated damages under Illinois Minimum Wage Law;

6. Award Plaintiff and the Class, prejudgment interest, and post-judgment interest;

7. Award Plaintiff reasonable attorneys' fees as well as the costs of this action;

8. Award such other and further relief as this Court deems necessary and proper, including but not limited to appropriate injunctive relief against any and all ongoing unlawful employment practices.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues for which a jury trial may be had.

Dated: April 3, 2014						Respectfully submitted,

						**LEVONNA WILKINS**

					By:  ____/s/ Terrence Buehler_____
						One of their Attorneys
						Terrence Buehler
						Touhy, Touhy & Buehler, LLP
						55 West Wacker Drive
						Suite 1400
						Chicago, Illinois 60601
						312-372-2209
						tbuehler@touhylaw.com

						Patrick J. Perotti
						Frank A. Bartela
						Nicole T. Fiorelli
						Dworken & Bernstein Co.
						60 South Park Place
						Painesville, OH 44077
						440-352-3391
						pperotti@dworkenlaw.com

						Murray Richelson
						David A. Katz Co., LPA
						842 Terminal Tower
						50 Public Square
						Cleveland, OH 44113
						216-696-5250
						mrichelson@aol.com

						James A. DeRoche
						Seaman Garson, LLC
						1600 Rockefeller Building
						614 West Superior
						Cleveland, OH 44113
						216-830-1000
						jderoche@seamangarson.com

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that on this day of April 3, 2014, I electronically filed the foregoing SECOND AMENDED COMPLAINT with the Clerk of the Court using the ECF system, and served the aforementioned document on all counsel of record via the ECF system.

/s/ Terrence Buehler
One of the attorneys for the Plaintiff