IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEVONNA WILKINS, on behalf of herself and others similarly situated, <br>     Plaintiff, <br><br> v. <br><br> JUST ENERGY GROUP, INC., JUST ENERGY ILLINOIS CORP., and COMMERCE ENERGY, INC.,[1] <br>     Defendants. | Case No. 13 C 5806 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Defendants Just Energy Group, Inc., Just Energy Illinois Corp., and Commerce Energy, Inc., seek reconsideration of the court's class certification order, arguing that plaintiff Levonna Wilkins did not satisfy the predominance element of class certification and that the class definition is overly broad because it includes all of the Just Energy defendants. Wilkins opposes the motion and, alternatively, seeks leave to file a third amended complaint to add an additional plaintiff (Robin Lewis) who worked for Commerce Energy. The defendants' motion to reconsider is granted to the extent that Wilkins can proceed as a named plaintiff for a class of Just Energy Illinois door-to-door workers during the class period, and is otherwise denied. Wilkins' motion for leave to file a third amended complaint to add Lewis as an additional plaintiff is held in abeyance pending submission of evidence regarding when Lewis stopped working for Commerce Energy.

---

[1] Just Energy Marketing Corp. is listed in the caption of the second amended complaint, but Wilkins does not make any substantive allegations about this entity and Just Energy Marketing Corp. is not listed as a defendant on the docket. Thus, unless the parties advise the court otherwise, the court will proceed based on the assumption that Just Energy Marketing Corp. is not a party to this action.

## I. LEGAL STANDARD

The court has the inherent authority to reconsider its interlocutory orders because such orders "may be revised at any time before the entry of judgment adjudicating all the claims." *See* Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) ("Rule 54(b) provides that non-final orders may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). A motion to reconsider an interlocutory order serves a limited purpose in federal litigation; it is not a vehicle to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier. *Schilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 554 (N.D. Ill. 2010). Rather, a motion to reconsider allows a party to direct the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or party's contention that the court ruled on an issue that was not properly before it. *See United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

With respect to the scope of the class definition, the summary judgment record appeared to indicate that defendant Just Energy Group hires individuals to go door-to-door on behalf of affiliated entities in Illinois, including Just Energy Illinois and Commerce Energy, and that the Just Energy entities generally followed the same policies and practices.[2] The court treated the Just Energy entities as a group based on this assertion as the parties' briefs did not sufficiently

---

[2] In her reply in support of her motion for leave to file a third amended complaint, Wilkins represents that Just Energy Marketing Corp. (as opposed to Just Energy Group) hires door-to-door workers who will be staffed at Commerce Energy and Just Energy Illinois. (Dkt. 105 at 1.) Based on the current record, it is clear that Wilkins performed door-to-door work for Just Energy Illinois but the court cannot determine which Just Energy entity actually hired her. However, as relevant here, she appears to concede that it was not Commerce Energy.

delineate the different Just Energy entities. In the motion to reconsider, however, the defendants assert that Wilkins was exclusively associated with Just Energy Illinois and that the class should include only Just Energy Illinois door-to-door workers.

"Reconsideration is not appropriate where a party seeks to raise arguments that could have been raised in the original briefing." *Wiegel v. Stork Craft Mfg., Inc.*, 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012). Nevertheless, the court recognizes that the original set of motions (intertwined motions for summary judgment and class certification) presented numerous complex issues and the precise nature of the relationship between the Just Energy defendants was unclear. While the court understood the breath of the class definition, it decided, based on the materials before it at that time, that it had no principled option other than to treat the Just Energy defendants as a group and await developments. It would have been more efficient to address the scope of the class in the original class certification order. Regardless, in an exercise of its discretion and to further the substantial interest of ensuring that the class definition is accurate and appropriate, the court will now consider which Just Energy defendants should be included in the class definition.

With this ruling in mind, the court turns to the motion to reconsider, which asks the court to revisit the class definition and its decision regarding predominance, and Wilkin's motion to amend her complaint to add a new plaintiff who worked for Commerce Energy. The court begins with predominance, as if the court agrees with the defendants, the class would be decertified, rendering any disagreements about the class definition moot.

## II. DISCUSSION

### A. Predominance – Calculation of Individual Damages

The defendants' prior opposition to class certification extensively discussed their concerns about the calculation of damages. The defendants currently seek reconsideration of the court's finding that Wilkins satisfied the predominance element of class certification, arguing that predominance does not exist due to individual questions about damages and the lack of a viable way to compute damages on a class-wide basis.

The court begins by recapping its prior overview of the predominance requirement. The Seventh Circuit has held that:

> Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication. Or, to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. Individual questions need not be absent. The text of Rule 23(b) (3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (internal citations, alterations, and quotation marks omitted).

With respect to damages, the fact that potential damages for individual class members vary is not fatal to a motion for class certification if substantial common issues outweigh individual issues regarding damages. *Id*. at 819 ("common proof of damages for class members . . . is not required"); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[i]f the issues of liability are genuinely common issues, and the damages of individual class members

can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification"); *see also* William B. Rubenstein, *et al.*, *Newberg on Class Actions*, vol. 2, § 4:54 (5th ed. 2012) (ordinarily, "individual damage[s] calculations should not scuttle class certification under Rule 23(b)(3)").

The predominance requirement in this case presented a close issue. For the following reasons, the variability in the damages that can be recovered by individual class members may raise thorny and potentially intractable issues. Nevertheless, at this time, the court is not inclined to revisit its decision to certify a class.

"The roadmap for determinating damages in an FLSA case (and by analogy, an IMWL case)" starts "with the seminal case of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) (superseded by statute on other grounds)." *Driver v. AppleIllinois, LLC*, No. 06 C 6149, 2013 WL 5818899, at *6 (N.D. Ill. Oct. 29, 2013). In *Mt. Clemens*, the Supreme Court held that employees must prove they performed uncompensated work but the remedial nature of the FLSA "militate[s] against making that burden an impossible hurdle for the employee" so "[d]ue regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper record of wages, hours and other conditions and employment, and who is in [a] position to know and to produce the most probative facts concerning the nature and amount of work performed." *Mt. Clemens*, 328 U.S. at 686-87.

The defendants' motion to reconsider relies heavily on *Espenscheid v. Directsat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), which the court considered when ruling on the underlying motion for class certification. In *Espenscheid*, the Seventh Circuit affirmed an order decertifying

a class in a case where the plaintiffs were proceeding collectively under the FLSA and state law. The plaintiffs were unable to explain how the forty-two representative class members were chosen and why their experiences generally tracked the experiences of the other class members, and did not provide a feasible litigation plan. *Id*. at 744. "Although the *Espenscheid* court upheld decertification for lack of a feasible litigation plan, it noted that in a case where individual class members' claims are not large enough to finance a lawsuit (which is probably the case here), 'the district court must carefully explore the possible ways of overcoming problems in calculating individual damages.'" *Harris v. Reliable Reports Inc.*, No. 1:13-CV-210 JVB, 2014 WL 931070, at *9 (N.D. Ind. Mar. 10, 2014) (quoting *Espenscheid*, 705 F.3d at 776).

One circumstance has changed since this court granted class certification. The pending Ohio case of *Hurt v. Commerce Energy, Inc.*, No. 1:12-CV- 00758, 2015 WL 1298674 (N.D. Ohio Mar. 23, 2015), is a virtually identical case against different Just Energy defendants based on the FLSA, which generally tracks the IMWL. *See Callahan v. City of Chicago*, 78 F. Supp. 3d 791, 821 (N.D. Ill. 2015), *aff'd by* No. 15-1318, 2016 WL 625428 (7th Cir. Feb. 17, 2016) ("Because the IMWL parallels the FLSA so closely, courts have generally interpreted their provisions to be coextensive, and so have generally applied the same analysis to both.").

In *Hurt*, after a jury found in favor of the plaintiffs on their FLSA and Ohio Wage Act claims, and after this court granted Wilkins' motion to certify a class, the *Hurt* court issued an opinion denying the defendants's motion to decertify the FLSA and Rule 23 classes. *Hurt*, 2015 WL 1298674, at *1. The *Hurt* court denied the motion to decertify because the defendants had "records of how much each Plaintiff was paid" and the parties agreed "that, if hours worked can be determined, then a mathematical formula can be used to determine damages based on each

employee's hours worked and wages earned." *Id*. The court explained that although each class member would be entitled to an individually calculated amount of damages, that amount would be derived from:

> a mathematical formula based on the number of hours worked and the amount of wages already earned . . . . The only issue for the trier of fact is how many hours each person worked. Given the small dollar values at stake for each plaintiff, class certification is likely the only feasible means of resolving the individual claims. And with proper management, class treatment is likely to be less burdensome to the parties than handling a large number of individual cases.

*Hurt*, 2015 WL 1298674, at *2.

The *Hurt* court, however, reserved the right to revisit the decertification issue at a later date as events warranted. *Id*. at *4. It also directed the parties to meet and confer, and "to submit position papers with proposals regarding the structure and timeline for conducting the damages phase." *Id*. The court indicated that it was "inclined to implement a streamlined process that would use proof-of-claim forms" so "[t]he parties' position papers should at a minimum propose who might design and administer those forms, how the responses would be evaluated, and what processes might be used to resolve any disagreements about particular claims. They should also address whether, in light of the use of claims forms, representative testimony on behalf of the FLSA collective action would be necessary." *Id*. Documents submitted by the defendants from the *Hurt* case indicate that proceedings regarding the method of computing damages are ongoing.

The defendants argue that the proceedings in *Hurt* demonstrate that damages can be determined only on an individual basis. It is unclear, however, if the damages evidence in this case will differ in any material way from the evidence in *Hurt*. Moreover, the parties in *Hurt* are still attempting to work out a methodology to calculate damages as the defendants represent that

-7-

"the parties in *Hurt* are negotiating an individualized claim process." (Dkt. 103 at 1 n.1.) This court lacks sufficient information to evaluate how damages are being established in *Hurt* and what that might mean, if anything, for this case. It is also premature to reach any decision in this case based on *Hurt* when no final decision has been reached regarding the calculation of damages.

Moreover, the claims of individual class members in this case appear to be small so the court must confirm the extent of available records and explore potential ways to calculate individual damages based on concrete facts, not arguments in briefs. *See Espenscheid*, 705 F.3d at 776; *see generally Tyson Foods, Inc. v. Bouaphakeo*, — S.Ct. —, No. 14-1146, 2016 WL 1092414, at *7-11 (Mar. 22, 2016). Finally, Wilkins has not been ordered to file a formal trial plan providing specifics about how she intends to establish damages. *See id*. at 773 (affirming decertification of a class asserting federal and state wage-and-hour claims when the plaintiffs' trial plan did not specify a feasible way of determining damages and there was no formulaic way to calculate damages). While the parties appear to agree that there are no records memorializing all of the hours each door-to-door worker spent on the job, "unreported time for each employee could be reconstructed from memory, inferred from the particulars of the jobs the [workers] did, or estimated in other ways – any method that enables the trier of fact to draw a just and reasonable inference concerning the amount of time the employee had worked would suffice." *Id*. Wilkins' attorneys must detail how they intend to proceed.

Thus, the defendants' motion to reconsider the certification order based on their arguments about damages is denied without prejudice. The parties are directed to meet and confer regarding damages and to be prepared to discuss this issue at the next status hearing.

**B. Scope of the Class and Wilkins' Motion for Leave to File a Third Amended Complaint Adding an Individual Who Worked for Commerce Energy as an Additional Plaintiff**

"A district court has the authority to modify a class definition and retains the power to modify that definition at different stages in litigation." *Magee v. Portfolio Recovery Associates, LLC*, No. 12-CV-1624, 2015 WL 5921536, at *1 (N.D. Ill. Oct. 8, 2015) (citing *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005)). The defendants contend that the class definition is overly broad because it includes all three Just Energy defendants (Just Energy Group, Just Energy Illinois, and Commerce Energy) rather than Just Energy Illinois. In contrast, Wilkins argues that the class definition should include both Commerce Energy and Just Energy Illinois. Thus, the court begins by red-lining the class definition to exclude Just Energy Group.

In support of her contention that the class definition should include Commerce Energy, Wilkins argues that all of the defendants' offices "were operating under a single policy to deny minimum wage and overtime, and each office was run identically and subject to the same policies, practices, etc." (Dkt. 96 at 1.) Alternatively, she asks for leave to amend her complaint to add Robin Lewis, a crew supervisor who worked for Commerce Energy in Illinois for more than five years and who was deposed in the *Hurt* case in Ohio for limited purposes.[3] In response, the defendants assert that Wilkins has standing to proceed as a class representative for door-to-

---

[3] The defendants assert that based on Lewis' description of her relationship with Commerce Energy in her deposition in the *Hurt* case, Lewis is analogous to Just Energy Illinois crew supervisor Ryan Goldman, as opposed to a door-to-door worker like Wilkins who was inexperienced, unsuccessful, and had a short tenure. In its summary judgment opinion, the court held that Goldman was not representative of a class consisting of workers like Wilkins. The court draws no conclusion from the defendants' comments about Lewis at this time other than noting that the defendants' contentions about Lewis raise questions about her suitability to represent a class of Commerce Energy workers whose experiences parallel Wilkins' experiences with Just Energy Illinois.

door workers employed by Just Energy Illinois but lacks standing to be a class representative for Commerce Energy workers. The defendants also oppose Wilkins' motion to add Lewis based on numerous grounds, including the statute of limitations.

      **1.**      **Standing – The Juridical Link Doctrine**

"[T]o bring a valid case, a plaintiff must allege that a defendant—the very defendant sued—has somehow wronged her in a legally cognizable way" by engaging in conduct that is "fairly . . . traceable to the challenged action of the defendant" as opposed to a third party. *Payton v. Cty. of Kane*, 308 F.3d 673, 678 (7th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-63 (1992)). In the context of a class and collective action arising under state wage law or the FLSA, a named plaintiff must personally have standing. *Schneider v. Union Hosp., Inc.*, No. 2015 C 204JMSDKL, 2016 WL 524354, at *6 (S.D. Ind. Feb. 10, 2016) (collecting cases). She cannot acquire standing by filing suit "on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs." *Id.* at *4 (quoting *Payton*, 308 F.3d at 682).

Wilkins contends that the "juridical link" doctrine allows her to represent class members who were employed by Commerce Energy even though she worked for Just Energy Illinois. Under the juridical link doctrine, "a class action may proceed where the plaintiffs as a group—named and unnamed—have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Arango v. Work & Well, Inc.*, No. 11 C 1525, 2012 WL 3023338, at *4 (N.D. Ill. July 24, 2012) (quoting *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 762 (N.D. Ill. 2008); *see also Payton*, 308 F.3d at 679.

The Seventh Circuit first recognized the juridical link doctrine in *Payton*. *Payton*, 308 F.3d at 679-80. In that case, the six named class representatives were arrestees who challenged a bail fee ranging from $1 to $45 that was imposed as a condition of release and that exceeded their set bail amount. *Id*. at 675. Although the named plaintiffs had claims against two counties, they moved to certify a class consisting of individuals who were affected by the practice in nineteen counties. *Id*. The Seventh Circuit invoked the juridical link doctrine, explaining that "if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the named class representatives did not have direct contact." *Id*. at 679. It then concluded that the plaintiffs could proceed because the bail bond fee was imposed pursuant to state statute and the county officials imposing the fees were acting as an arm of the state, explaining that "[t]he constitutionality of a bond fee (whether $1 or $45) should not differ from one county to the next, when such a fee is imposed pursuant to the same statute." *Id*. at 680.

Importantly, however, the Seventh Circuit cautioned that:

> [t]his is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members. That, of course, would be impermissible, in light of the fact that "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.

*Id*. at 682 (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, C.J., dissenting)).

As noted above, Wilkins argues that the juridical link doctrine cures her standing issue vis-a-vis Commerce Energy because all of the defendants—including Commerce Energy—acted in concert and followed the same policies and practices. Even if this assertion is true in all

-11-

material respects (an issue which the court need not address), the juridical link doctrine does not reach this far. In *Payton*, the named plaintiffs "were personally injured by the operation of the very same statute that caused the injuries to all other members of the proposed class." *Id*.

In contrast, if defendants are allegedly linked by a common course of conduct, the juridical link doctrine is inapplicable. *Brunner v. Jimmy John's, LLC*, No. 14 C 5509, 2015 WL 5086388, at *3 (N.D. Ill. Aug. 19, 2015). This is particularly true when, as here, the defendants are private actors. *Id*. Thus, when named plaintiffs did not work for all of the named defendants, courts have held that their allegation that the defendants violated the FLSA and state law by following a "common policy, plan or practice" is not enough to establish that the juridical link doctrine is available. *Id*. at *2 (holding that the juridical link doctrine did not allow plaintiffs who worked for one restaurant to pursue FLSA and state wage claims against defendant franchisees of the same restaurant on a nation or statewide basis even though the franchisees allegedly violated the FLSA and state law in the same way); *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918, 923 (N.D. Ill. 2012) (the existence of a claim based on "an overarching statute" regulating debt collection is insufficient to allow the named plaintiffs to proceed against debt collectors with whom the named plaintiffs had no contact, despite the plaintiffs' contention that the debt collectors all followed the same course of conduct). Wilkins' allegations about the purportedly similar practices of Just Energy Illinois and Commerce Energy thus do not allow her to represent a class consisting of Commerce Energy door-to-door workers.

This conclusion is further supported by the fact that the Seventh Circuit has approved the use of the juridical link doctrine when "appropriate relief may only be obtained through one

broad suit, and it will be impossible to find a named plaintiff to match each defendant." *Payton*, 308 F.3d at 681-82. This is not the case here, as established by the fact that Wilkins is currently attempting to amend her complaint to add Robin Lewis (who worked for Commerce Energy) as an additional named plaintiff. *See Brunner*, 2015 WL 5086388, at *3; *Davidson*, 914 F. Supp. 2d at 923. Thus, the juridical link doctrine does not allow Wilkins to proceed as a named plaintiff representing class members who worked for Commerce Energy.

### 2. Motion to Add Robin Lewis as an Additional Named Plaintiff

The defendants first correctly note that Wilkins has not submitted a proposed amended complaint, leaving them with no way to ascertain what allegations Wilkins intends to add about Lewis. They argue that, in any event, adding Lewis as an additional plaintiff would not cure the standing issue as to Commerce Energy because Lewis' claims are, at this point, time-barred given when Lewis' claims accrued and the fact that Wilkins, who filed suit in 2013, never had standing to proceed against Commerce Energy because she was employed by Just Energy Illinois. In her four-paragraph reply, Wilkins implicitly concedes that a statute of limitations problem exists by contending that Lewis is entitled to tolling of the statute of limitations pursuant to *American Pipe & Construction. Co. v. Utah*, 414 U.S. 538 (1974), as of the date Wilkins filed suit.

In *American Pipe*, "the Supreme Court held that the timely filing of a class action complaint commences suit and tolls the statute of limitations for all members of the putative class." *Practice Mgmt. Support Servs., Inc. v. Cirque Du Soleil Inc.*, No. 14 C 2032, — F. Supp. 2d —, 2015 WL 7008137, at *3 (N.D. Ill. Nov. 12, 2015) (citing *American Pipe*, 414 U.S. at 554). As the Supreme Court explained, "Rule 23 is not designed to afford class action

-13-

representation only to those who are active participants in or even aware of the proceedings in the suit prior to the order that the suit shall or shall not proceed as a class action." *American Pipe*, 414 U.S. at 554. Instead, as of the time that a complaint styled as a class action is filed, the members of the putative class "are mere passive beneficiaries of the action brought in their behalf." *Id.*; *see also Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983) (*American Pipe* tolling applies to all putative class members, as well as putative intervenors). "It follows that even as to asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings, the later running of the applicable statute of limitations does not bar participation in the class action and in its ultimate judgment." *Id*.

*American Pipe*'s tolling rule is premised on the general rule that the filing of a putative class action lawsuit by a named plaintiff "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id*. at 554-55. This gives the defendant notice, within the statute of limitations, of "the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors." *Id*. at 555.

Justice Powell, however, cautioned that courts should refrain from using *American Pipe* to allow the assertion of "claims that differ from those raised in the original class suit." *Crown, Cork & Seal*, 462 U.S. at 355 (Powell, J., joined by Rehnquist, J. and O'Connor, J., concurring). "To that end, he instructed district courts to 'take care to ensure that [any subsequent] suit raises

claims that concern the same evidence, memories, and witnesses as the subject matter of the original suit so that the defendant will not be prejudiced." *Practice Mgmt. Support Servs., Inc.*, 2015 WL 7008137, at *4 (quoting *Crown, Cork & Seal*, 462 U.S. at 355).

Wilkins argues that courts routinely apply *American Pipe* tolling "when the plaintiff representative lack[s] standing." (Dkt. 105 at 2.) The defendants contend that *American Pipe* is inapplicable for multiple reasons, and stress that "[m]ost importantly, the cases Wilkins cites are inapplicable as they do not invoke Illinois' tolling rules, which apply because Illinois law provides the statute of limitations for her IMWL claim." (Dkt. 103 at 12.)

This is correct, as "*American Pipe* applies only to claims under federal law for which the period of limitations is also federal, whereas '[w]hen state law supplies the period of limitations, it also supplies the tolling rules.'" *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, 2015 WL 3988488, at *25 (N.D. Ill. June 29, 2015) (quoting *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 265 (7th Cir. 1998)). Thus, *American Pipe* and its progeny "involve the tolling of *federal* statutes of limitations in class actions filed in federal courts, not the tolling of *state* statutes of limitations in class actions filed in federal courts." *Id.* at *30 (emphasis in original); *see also Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1011-12 (N.D. Ill. 2010) (when considering an IMWL claim, the court "must look to Illinois tolling principles to determine whether Illinois recognizes class action tolling, by adopting the *American Pipe* rationale or otherwise").

The defendants cite to authority indicating that Illinois courts recognize the *American Pipe* rule but apply it in the class tolling context only "as to all asserted members who would have been parties had the suit been permitted to continue as a class action." *Hess v. I.R.E. Real*

*Estate Income Fund, Ltd.*, 629 N.E.2d 520, 530 (Ill. App. Ct. 1993). Lewis, who worked for Commerce Energy, is not a member of the class headed by Wilkins, who worked for Just Energy Illinois. In her reply memorandum, Wilkins briefly argues that Lewis is entitled to tolling under *American Pipe* based on three federal court cases from New York, Massachusetts, and Illinois that apply *American Pipe*. The Illinois case, *Searcy v. eFunds Corp.*, involved a federal Fair Credit Reporting Act claim.[4] No. 08 C 985, 2010 WL 1337684 (N.D. Ill. Mar. 31, 2010). Thus, *Searcy* does not address *American Pipe* tolling in the context of a claim arising under Illinois law. This leaves Wilkins with no authority or discussion that is germane to the tolling issue before the court.

In Illinois, "upon the filing of a class action, the statute of limitations is normally tolled for all putative plaintiffs." *Hess*, 629 N.E.2d at 531 (citing *American Pipe*, 414 U.S. at 550-51). In *Hess*, the defendants argued that this rule is inapplicable when a class action is dismissed due to lack of standing, while the plaintiffs argued that tolling is available if the named plaintiff has standing with respect to some, but not all, of the defendants. *Id*. at 532. The Illinois Appellate Court found that the plaintiff's "lack of standing toward 15 of the 16 defendants was apparent on the face of her complaint" because the plaintiff alleged that she had purchased her security interest from one defendant and had no dealings with any of the other defendants she had sued." *Id*. at 533. Thus, the *Hess* court concluded that "[u]nder these circumstances, it was not reasonable for the absent plaintiffs to rely on the class action suit to protect their rights." *Id*.

---

[4] Wilkins does not provide a pinpoint citation to *Searcy*. In the interests of completeness, the court has attempted to divine her position by studying that case.

Here, Wilkins filed suit against Just Energy Group on August 14, 2013. (Dkt. 1.) On January 28, 2014, she filed an amended complaint naming Just Energy Group, Just Energy Illinois, and Commerce Energy. (Dkt. 28.) That complaint (as well as the second amended complaint, Dkt. 39) treats all of the defendants as a group. The defendants assert that Wilkins always knew that she worked exclusively for Just Energy Illinois, but this key fact is not apparent from the complaint. Indeed, even the defendants concede that "Wilkins' lack of standing is not clear from her pleadings, as she conflates all of the named [defendants]." (Dkt. 103, at 9 n.4.) The court's summary judgment ruling and the current class definition are further evidence of the lack of clarity regarding Wilkins' employment status. Given these circumstances, it would have been reasonable for members of the putative class of Commerce Energy door-to-door workers to rely on Wilkins' class action lawsuit against Commerce Energy (among others) to protect their rights. *See Hess*, 629 N.E.2d at 533. Thus, the court finds that tolling is available.

The defendants, however, contend that even if the court allows the certified class to include Commerce Energy, the three-year statute of limitations applicable to IMWL claims extends back to three years before Wilkins added Commerce Energy as a defendant in this case. *See* 820 Ill. Comp. Stat. § 105/12(a) (three-year statute of limitations for IMWL claims). Since Wilkins added Commerce Energy on January 28, 2014, the class period as to Commerce Energy starts on January 28, 2011. The defendants assert that discovery in the *Hurt* case shows that Lewis stopped working for Commerce Energy "sometime in 2010."[5] (Dkt. 103 at 10.) Thus,

---

[5] The defendants assert that the class includes only individuals who started working for Commerce Energy on or after January 28, 2011. (Dkt. 103 at 10.) The court fails to understand why individuals working for Commerce Energy after January 28, 2011, would not be class

-17-

they conclude that Lewis falls outside the class period and cannot proceed against Commerce Energy.

If Lewis left Commerce Energy before the class period began, she is not a suitable class representative for a class comprised of Commerce Energy door-to-door workers as of January 28, 2011. The parties must submit admissible evidence on this point. Accordingly, Wilkins' motion for leave to amend to add Lewis as an additional plaintiff is held in abeyance pending submission of evidence regarding when Lewis stopped working for Commerce Energy.

### III. CONCLUSION

For the above reasons, the defendants' motion to reconsider [92] is granted to the extent that Wilkins can proceed as a named plaintiff for a class of Just Energy Illinois door-to-door workers during the class period, and is otherwise denied. Wilkins' motion for leave to file a third amended complaint to add an additional plaintiff (Robin Lewis) who wishes to assert class claims against Commerce Energy [96] is held in abeyance pending submission of evidence regarding when Lewis stopped working for Commerce Energy. The parties are directed to confer with respect to modification of the class definition and Lewis' employment termination date and should be prepared to address these issues at the next status hearing, which will proceed on April 15, 2016, at 9:30 a.m.

Date: March 22, 2016  /s/
  Joan B. Gottschall
/cc  United States District Judge

---

members, regardless of when they were hired.