IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEVONNA WILKINS, ON BEHALF OF HERSELF AND ALL OTHER SIMILARY SITUATED, | CASE NO. 1:13-CV-05806 |
| Plaintiff, | JUDGE MATTHEW F. KENNELLY |
| v. | |
| JUST ENERGY GROUP, INC., JUST ENERGY ILLINOIS CORP., COMMERCE ENERGY, INC., AND JUST ENERGY MARKETING CORP., FOREIGN CORPORATIONS, | |
| Defendants. | |

**JOINT STATUS REPORT ON DAMAGES PHASE**

The Parties, jointly and by and through their undersigned attorneys, in compliance with the Court's March 27, 2019 Minute Entry (Doc. No. 213), hereby submit the following status report.

A.  INTRODUCTION

On March 27, 2019, this Court requested that the parties meet, and hopefully agree upon, a Joint Proposal on how to conduct the damage phase of this litigation should it become necessary. On April 4, 2019, the Parties met and discussed the process that was utilized in *Hurt, et al. v. Commerce Energy, Inc., et al.,* (N.D. Ohio, Case No. 1:12-CV-758), ways that process could be improved, and, ultimately agreed upon a Joint Proposal for a damage award process. In this Joint Status Report, the parties will explain the process used in the Hurt matter and explain how and why that process should be utilized here.

B.     **RELEVANT FACTUAL BACKGROUND**

"Defendant Just Energy Group hires individuals to go door-to-door on behalf of affiliated entities. . . .The primary objective of these workers is to convince prospects to sign up for Just Energy Illinois' [energy] programs." Dkt. No. 209 (*quoting Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 173-74 (N.D. Ill. 2015)). Essentially, class members worked out in the field visiting prospective customers at their residence or place of business.

To determine unpaid minimum wage or overtime owed, if any, it is necessary to determine the class member's pay, tenure, and hours worked per week. Defendants have pay records for each class member; however, records as to tenure and hours worked per week are incomplete. Defendants have records of when a class member started working for Just Energy (referred to as a "registration date") and also have records of when a class member submitted what Plaintiffs refer to as an application and Defendants refer to as a contract signed by a customer (thus the class member worked for at least some portion of that day). However, class members were not required to record hours worked and Defendants, believing that the outside sales exemption applied, did not keep or maintain records demonstrating which hours or even days class members worked (class members may have worked days in which they did not turn in a signed application/contract). Defendants also do not have documentation demonstrating when a class member ceased to perform work for Defendants.

    **C.    PROCESS UTILIZED IN *HURT, ET AL. V. COMMERCE ENERGY, INC., ET AL.*, (N.D. OHIO, CASE NO. 1:12-CV-758)**

At the conclusion of the liability phase of the *Hurt* matter, the parties agreed to a plan for adjudicating the damages claims for the class members, which the district court approved. See *Hurt*, N.D. Ohio Case No. 1:12-CV-758, Doc. 846, Page ID#s 14759-14760 (agreeing the process proposed by the parties "is a fair and efficient method of determining individual damages"). The Parties understood that it would be time prohibitive and logistically impractical for the Parties to arrange depositions for all members of the class. Therefore, they needed to develop a process whereby all individual class members who wished to participate in the damage award could submit their claim for "hours worked" and the Parties could independently evaluate those claims in light of other information and documents produced in the case. The Parties agreed to use a survey to conduct the "hours worked" information from each individual litigant instead of depositions. The Parties would then analyze the surveys and work together to determine whether they could agree upon a backpay number on whether there would be a need to have a hearing.

    **1.    <u>Survey Design</u>**

With the help of an independent expert, the Parties created several form surveys that, when collated with certain data from the class member's tenure with Defendants, inquired into various aspects of each litigant's work experience. Ultimately, the surveys sought information as to hours, days and weeks worked for Defendants and how the

litigant's memory corresponded to data regarding when contracts were secured during their time with Defendants. An example of this survey used is attached as Exhibit A.

### 2. Administration, Collection and Analysis of Surveys

With the assistance of a third-party administrator, surveys were mailed to the last known address for every member of the class of Ohio workers and all the FLSA opt-ins – a total of 8,938 surveys in all. Each recipient had 60 days to complete and return their survey. If a survey was returned as undeliverable, the administrator would research an alternative address and resend the survey to the new address. Once returned, a copy of the survey was provided to each party to analyze.

### 3. Meet and Confer

After the Parties had finished analyzing the survey and contract data, the attorneys met in person to discuss each individual's backpay claim. The purpose of this meeting was to see if the Parties could agree on a backpay award for each Plaintiff without the necessity of a hearing. During this meeting, each side presented a proposed backpay amount. If there was no agreement, there would be further discussion and negotiation about the individual facts and circumstances known to the Parties at that time. Of the more than 530 individual class members who submitted survey responses, the Parties resolved all but 14 of them at this stage of the proceedings.

### 4. Hearing

The parties agreed to submit the remaining claims to the Court for adjudication. At this stage, the Parties agreed to the jurisdiction of the Magistrate Judge assigned to the case to serve as a special master and waived an entitlement to have the damage claims

decided by a jury. Those litigants who went to the hearing testified either in the court room or over video conference. The hearing took two days and the Parties provided the Magistrate Judge Joint Verdict Forms. The Magistrate Judge rendered his verdict within a week.

### D. RATIONALE FOR ADOPTING *HURT* MODEL AND WAITING UNTIL AFTER LIABILITY PHASE

As in *Hurt*, the parties believe the survey process is the appropriate method to best ascertain the hours worked by the class members. Class counsel believes, in this particular case, this method is preferable to attempting to prove the damages for each individual class member through representative testimony. And as stated by the Court in *Hurt*, the benefits of a claims process is that the class can remain certified and "each plaintiff, through submission of a standardized form, can assert how many hours he worked, and Defendants can have an opportunity to contest the claims in a less formal proceeding without the need for a full-blown trial. ***[T]he use of these forms would significantly streamline discovery and could facilitate settlements. Armed with the information obtained from these forms, the parties and the Court could make informed decisions about how best to deal with challenges to individual claims." *Hurt v. Commerce Energy, Inc.*, N.D. Ohio No. 1:12-CV-00758, 2015 WL 1298674, *3.

There currently are 5,788 class members in the *Wilkins* case. To complete the damage phase concurrently with the liability phase would require a significant expenditure of resources. In the *Hurt* damage phase, with 8,938 class members, the Parties spent over 1000 attorney hours analyzing survey responses and contract data,

5

calculating backpay damages and adjudicating damage claims. Additionally, the parties expended more than $60,000 in the design and administration of the survey process.

If the Hurt process is adopted, the parties will be able to reuse the *Hurt* form surveys (with some modification) without the need to pay substantial fees to the expert again. However, the remaining expense associated with the administration and analysis of the damage related discovery is still required. If liability is not found, the expenditure of these resources would become completely unnecessary.

E. **PROCESS PROPOSED BY THE PARTIES IN *WILKINS***

In light of the above, the Parties jointly propose that should it become necessary, this Honorable Court adopt an approach similar to the one employed in the *Hurt* matter. The Parties believe that they have learned much from the *Hurt* process and that they can improve the surveys, streamline this process and reach a conclusion in this manner as efficiently as possible. Accordingly, we propose the following steps be adopted:

1. **Survey Design**: The surveys are already constructed. The Parties believe these surveys can be tweaked slightly to be even more effective at eliciting pertinent information. Any changes to the surveys will be accomplished in advance of the trial on liability so that the surveys can be assembled and mailed shortly after a verdict, if necessary.

2. **Administration**: A third-party administrator will be identified and tasked with the assembly and dissemination of the surveys. Each class member will have 60 days from mailing to complete and return the surveys. As in

*Hurt*, the participants will have the ability to discuss with the administrator any issues they may have with completing the surveys.

3. **Verification and Analysis:** As the surveys are being returned, the Parties will review and analyze the results in preparation for compromise or hearing. Plaintiffs' counsel will also be in contact with their clients during this stage to ascertain whether compromise is possible. The duration of this stage depends in part on the number of class members who respond to the survey. After the survey deadline has passed, the parties anticipate conferring with one another and the Court about the time needed to complete this stage.

4. **Meet and Confer:** Counsel for the Parties will meet in person to discuss everyone who submitted a survey with the intent on reaching a compromise. As was the case in *Hurt*, The Parties believe that this meeting can resolve the vast majority of claims, thereby limiting the amount of time necessary for hearing.

5. **Hearing:** The Parties would ask the Court to approve a Special Master – preferably a Magistrate Judge – to preside over a hearing to resolve any remaining disputed claims.

At the conclusion of this process, the Parties will have agreed to, or the Court will have entered, final judgment as to all active participants.

**Jointly submitted this 11th day of April 2019.**

| ATTORNEYS FOR PLAINTIFFS<br>LEVONNA WILKINS, et al. | ATTORNEYS FOR DEFENDANTS<br>JUST ENERGY GROUP, INC., et al. |
|---|---|
| */s/ Nicole T. Fiorelli*<br>Patrick J. Perotti (0005481)<br>Nicole T. Fiorelli (0079204)<br>Frank A. Bartela (0088128)<br>DWORKEN & BERNSTEIN CO., L.P.A.<br>60 South Park Place<br>Painesville, OH 44077<br>Telephone: 440.352.3391<br>Email: pperotti@dworkenlaw.com<br>  nfiorelli@dworkdenlaw.com<br>  fbartela@dworkenlaw.com | */s/ Amanda E. Inskeep*<br>Jennifer Schilling ARDC# 6256634<br>Catherine S. Lindemann ARDC# 6297039<br>Amanda E. Inskeep ARDC# 6303577<br>LITTLER MENDELSON, P.C.<br>321 North Clark Street, Suite 1000<br>Chicago, IL 60654<br>Telephone: 312.372.5520<br>Email: jschilling@littler.com<br>  clindemann@littler.com<br>  ainskeep@littler.com |
| Terrence Buehler, Esq.<br>THE LAW OFFICE OF TERRENCE BUEHLER<br>1 S. Wacker Dr., Suite 3140<br>Chicago, IL 60606<br>Telephone: 312.371.4385<br>Email: tbuehler@tbuehlerlaw.com | Bradley A. Sherman (0063906) (Pro Hac Vice)<br>SHERMAN BOSEMAN LEGAL GROUP, LLC<br>800 West St. Clair Avenue, 4th Floor<br>Cleveland, OH 44113<br>Telephone: 216.239.1414<br>Facsimile: 216.239.1316<br>Email: bradley@shermanboseman.com |
| James A. Roche (0055613)<br>GARSON JOHNSON LLC<br>Midland Building<br>101 West Prospect Avenue, Suite 1610<br>Cleveland, OH 44115<br>Telephone: 216.696.9330<br>Email: jderoche@garson.com | Shannon K. Patton (0069407) (Pro Hac Vice)<br>LITTLER MENDELSON, P.C.<br>1100 Superior Avenue, 20th Floor<br>Cleveland, OH 44114<br>Telephone: 216.696.7600<br>Email: spatton@littler.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 11, 2019, the foregoing *Joint Status Report on Damages Phase* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Amanda E. Inskeep*
Amanda E. Inskeep

One of the Attorneys for Defendants
JUST ENERGY GROUP, INC., et al.

FIRMWIDE:163801062.1 071198.1014