## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LEVONNA WILKINS,<br>on behalf of herself and<br>all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 13 C 5806 |
| JUST ENERGY GROUP, INC.,<br>JUST ENERGY ILLINOIS CORP.,<br>COMMERCE ENERGY, INC., and<br>JUST ENERGY MARKETING CORP., | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER ON REMAINING MOTIONS IN LIMINE

MATTHEW F. KENNELLY, District Judge:

The judge originally assigned to the case presided over it for five and one-half years and made numerous significant rulings, including certification of a class and denial of summary judgment, as well as rulings on multiple motions for reconsideration. In March 2019, the judge denied the last of the motions to reconsider, making it clear that the case would go to trial. But at that point the judge bowed out of the case and caused it to be reassigned under 28 U.S.C. § 294(b). It was reassigned to the undersigned judge, who will now be presiding over a trial in which the table has been largely set by the previous judge's rulings.

In some of the remaining motions *in limine*, defendants essentially ask the Court to depart from certain of the previous judge's rulings. In response, plaintiffs cry foul, citing the "law of the case" doctrine and cases stating that a motion *in limine* is not a

proper means to relitigate a summary judgment ruling. The Court begins with a few comments on these points.

The undersigned judge, having been reassigned the case, has the exact same authority that the prior judge would to reconsider prior rulings. And Federal Rule of Civil Procedure 54(b) permits revision of a non-final order at any time before entry of final judgment. Fed. R. Civ. P. 54(b); *see also Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985) (judge has the power to reconsider an interlocutory order at any time before final judgment). All of the rulings cited by plaintiff are interlocutory, non-final rulings.

Under the law of the case doctrine, a judge should refrain from reopening issues decided at earlier stages of the case absent extraordinary circumstances. *See Galvan v. Nordberg*, 678 F.3d 5891, 587 (7th Cir. 2012). But this is not some sort of iron rule; it "is discretionary and does not preclude a district court from reopening a decided issue." *Id.* The Seventh Circuit has also "advise[d] judges that, because litigants have a right to expect consistency even if judges change, the second judge should abide by the rulings of the first judge unless some new development, such as a new appellate decision, convinces him that his predecessor's ruling was incorrect." *Id.* But this, too, is a prudential consideration.

The Court will address the remaining motions *in limine* in a manner consistent with rulings by the prior judge, to the extent she ruled on the points being discussed. But when the context in which an issue is presented differs from the one in which the previous judge addressed it, or the issue is not presented in precisely the same way, the law of the case doctrine is even less controlling than it otherwise would be. *Id.* And the parties should be aware that when it comes time for consideration of motions under

2

Federal Rule of Civil Procedure 50 and 59, if any are made during or after trial, that will be a different procedural context from the pretrial rulings made by the previously assigned judge.

In this order, the Court rules on the parties' remaining motions *in limine*.

**1.        Defendants' remaining motions**

a.        Defendants ask the Court to exclude evidence of the amount of compensation that class members received, arguing this is irrelevant regarding whether the outside salesperson exemption under the Illinois Minimum Wage Law applies. Plaintiffs contend that the previous judge found this evidence relevant, but a careful reading of the judge's decisions indicates otherwise:  she did say that there was a dispute over the level of pay, but she did not make a ruling that this is a factor to be considered in deciding whether the outside salesperson exemption applies.  Thus the undersigned judge is not bound (or quasi-bound) by any ruling on the admissibility or materiality of this evidence.

The primary disputed issue for trial is the applicability of the outside salesperson exemption to coverage under the Illinois Minimum Wage Law, which sets a minimum wage for workers within its scope and requires enhanced pay for hours worked in excess of 40 per week.  The exemption states that the IMWL's requirements do not apply to "any individual permitted to work . . . [a]s an outside salesman," a term defined in the statute to mean "an employee regularly engaged in making sales or obtaining orders or contracts for services where a major portion of such duties are performed away from his employer's place of business."  820 ILCS 105/3(d)(4), (g).  Defendants contend that the exemption does not contain a minimum compensation requirement and

that the amounts individual class members earned are irrelevant in determining whether they were "regularly engaged in making sales or obtaining orders or contracts for services."

Neither the statute nor any regulations under it established by the Illinois Department of Labor addresses the relevance, in deciding the exemption's applicability, of the level of pay of the employee(s) in question. At various points in their arguments on this and other points, both sides have pointed to the federal Fair Labor Standards Act, an earlier but parallel enactment the application of which is sometimes considered to be controlling or at least highly persuasive in applying the IMWL. The Court therefore turns to that statute to assess what it says about the disputed point.

The question of level of pay was referenced in the Supreme Court's decision in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012), in which the Court considered the parallel "outside salesmen" exemption under the FLSA. The FLSA provision exempts workers "employed . . . in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). The statute does not define "outside salesman," but it delegates authority to the Department of Labor to issue regulations defining the term. The pertinent DOL regulation defines the term to mean "any employee . . . [w]hose primary duty is . . . making sales within the meaning of [29 U.S.C. § 203(k)]" and "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a)(1)-(2). Section 203(k) of the statute says that the term "[s]ale . . . includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k).

4

The Court will discuss *Christopher* in some detail because it is pertinent not just to the present issue but to others the Court will address in this decision. The Supreme Court concluded in that case that a DOL regulation requiring a transfer of title for a "sale" to occur within the meaning of the outside salesmen exemption was not entitled to deference, largely because it conflicted with the statutory definition in section 203(k). The Court went on to say that section 203(k)'s language stating that sales *include* the listed activities meant that the list was "intended to be illustrative, not exhaustive," *id.* at 162, and that section 203(k)'s use of the term "other disposition" was meant to include "those arrangements that are tantamount, in a particular industry, to a paradigmatic sale of a commodity." *Id.* at 164. Thus even though the workers in *Christopher* (pharmaceutical company "detailers") obtained from their customers (physicians) nonbinding commitments to prescribe the company's drugs rather than a transfer of title to the drugs, they were "making sales" because that is the most they could do to ensure the eventual disposition of the company's drugs, given the regulatory environment regarding pharmaceutical products and how such products are dispensed. *Id.* at 165.

To support its conclusion, the Court also considered the fact that the detailers bore "all of the external indicia of salesmen": they were "hired for their sales experience"; "[t]hey were trained to close each call by obtaining the maximum commitment possible"; "[t]hey worked away from the office, with minimal supervision"; and "[t]hey were rewarded for their efforts with incentive compensation." *Id.* at 165-66. The Court also stated that its conclusion regarding the applicability of the exemption "comports with the apparent purpose of the FLSA's exemption for outside salesmen," because the exemption, when created, was premised on the belief that exempt

5

employees earned well more than the minimum wage and enjoyed other benefits that set them apart from non-exempt workers—which was true of the detailers considered in *Christopher*. *Id.* at 166. Finally, the Court noted that in establishing the exemption, "[i]t was also thought that exempt employees performed a kind of work that was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week," making compliance with the FLSA's overtime provisions difficult. *Id.* at 166. In this regard, the Court said that "it would be challenging, to say the least, for pharmaceutical companies to compensate detailers for overtime going forward without significantly changing the nature of that position." *Id.*

Despite the importance of *Christopher* given its construction of a very similar federal statutory exemption, it is worthy of note that there are textual differences between the pertinent IMWL exemption and the FLSA's "outside salesmen" exemption addressed in *Christopher*. First, the FLSA requires that the worker's "primary duty" is making sales; the IMWL is worded differently and requires the worker to be "regularly engaged" in making sales. Second, the IMWL exemption appears to differentiate between "making sales" and "obtaining orders or contracts for services." If the exemption is parsed as one would a regular sentence, the former ("making sales") appears to concern goods; the latter, by its terms, concerns only services. The FLSA does not differentiate between goods and services. Third, the FLSA contains a statutory definition of "sales"; the IMWL does not.

On the particular point at issue in defendants' motion, the Court does not read *Christopher*—or, for that matter, any other persuasive authority cited by plaintiffs—to say that the amount of compensation received by a particular commissioned worker or

6

group of workers is a relevant factor to consider in determining the applicability of the outside salesperson exemption. In contrast to the Supreme Court's treatment of the so-called "external indicia of salesmen," the Court did not reference the pharmaceutical detailers' pay level as a basis to apply the outside salesmen exemption. Rather, it said that its conclusion that the detailers were not outside salesmen comported with the apparent purpose of the exemption, because it was created with the belief that outside salespeople are often paid well in excess of the minimum wage. There is a difference between a legislative purpose in creating a statutory exemption and a criterion for the exemption's applicability. Plaintiffs cite nothing persuasive that supports the proposition that the Illinois legislature's (assumed) understanding about the pay level of outside salespeople means that outside salespeople that aren't paid well fall outside the exemption for that (or partly that) reason.

The Court concludes that evidence regarding pay levels of Just Energy salespeople is irrelevant. In addition, its admission would be unfairly prejudicial in a way that significantly outweighs its very minimal probative value, because it would tend to divert the jury from application of the statutory requirements for the exemption. *See* Fed. R. Evid. 403. The Court therefore grants defendants' motion *in limine* on this point.

b. Defendants next ask the Court to exclude evidence of the proportion of submitted contracts that resulted in commission payments—or, to put it another way, the proportion that resulted in completed sales. The Court denies the motion. As noted earlier, the IMWL requires the worker to be regularly engaged in making sales, or in obtaining orders or contracts for services. Plaintiffs say that "making sales" means *completed* sales.

On this particular point, there are the textual differences between the IMWL and the FLSA that may be significant. The Illinois statute does not define the term "making sales" and, as noted, distinguishes that from obtaining orders or contracts for services. By contrast, the federal statute (29 U.S.C. § 203(k)) defines making sales to *include* contracts to sell and consignments for sale. The presence of that statutory definition was a key factor in *Christopher* for the Supreme Court's disapproval of a Department of Labor regulation that indicated that a transfer of title (i.e. a completed sale) is required for a "sale" to occur. The text of the Illinois statute appears to indicate otherwise.

Defendants cite 56 Ill. Admin. Code § 210.120, which says that "[f]or guidance in the interpretation of the [IMWL] and its own regulations, the Director [of the Illinois Department of Labor] may refer to the Regulations and Interpretations of the Administrator, Wage and Hour Division, U.S. Department of Labor, administering the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201 et seq.)." But this does not actually help defendants in this case, as they cite no such regulation or interpretation that cuts in their favor on this point. The key federal regulation defining sales is the one the Supreme Court disapproved in *Christopher*, which required a transfer of title. That does not help defendants here because the overwhelming majority of the workers involved in the present case appear to have been quite unsuccessful in obtaining *actual sales* of defendant's products (natural gas). And the federal provision defining "sale" to include a contract for sale is *not* a "regulation" or "interpretation" by the U.S. Department of Labor; rather, it is a statutory term in the FLSA—one that the Illinois legislature did not adopt, either directly or by adopting a statute stating that the state law's exemption, or terms of the state statute, are to be read consistently with the FLSA

8

statutory definitions to the extent they exist.

Defendants also cite a phrase in the Federal Register to the effect that "[e]mployees have a primary duty of making sales if they obtain a commitment to buy from the customer and are credited with the sale." *See* 69 Fed. Reg. 22122, 22162, 2004 WL 865626 (U.S. Dep't of Labor Apr. 23, 2004). They have taken this out of context. The phrase is found in a section of the publication that concerns a proposed regulation defining "promotion work" and, more specifically, in a discussion that concerns whether a worker is attempting to consummate his own sales rather than those of the company generally. *See id.* The Court does not see this as a phrase that can appropriately be used to expand or "clarify" what "making sales" means under the IMWL.

The Court concludes that evidence of the proportion of submitted contracts that resulted in actual sales/commission payments is relevant and admissible to show whether Just Energy sales representatives were "making sales" (and, perhaps, for other purposes).

c.    Defendants next ask the Court exclude evidence that the door-to-door workers were classified as independent contractors, saying it is irrelevant. Plaintiffs say that they "will not be focusing on this at trial," Pls.' Resp. (dkt. no. 228) at 13, as they are concerned that the jury might interpret the fact that the workers were independent contractors as determinative of their entitlement to the minimum wage and overtime pay. It therefore seems that both sides want this evidence out, and with that in mind, the Court excludes it.

The Court agrees with plaintiffs, though, that evidence regarding the degree of

9

control that defendants exerted over the workers is relevant on the applicability of the exemption, as more fully discussed below.  This bears directly on one of the "external indicia of salesmen" cited in *Christopher* as bearing on whether the parallel FLSA exemption applies.

   d.  Finally, defendants ask the Court to exclude evidence that in 2017—after the class period—they reclassified the door-to-door workers as non-exempt employees. This evidence is inadmissible under Federal Rule of Evidence 407 as a subsequent remedial measure.  *See Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1045 (7th Cir. 2007).  Plaintiffs argue that the evidence should be admitted to show that it was feasible for defendants to pay the workers on an hourly basis, which bears on a factor identified as a relevant consideration in *Christopher*.  At the final pretrial conference, however, defendants stated that neither counsel nor corporate witnesses will dispute the feasibility of paying the workers on an hourly basis.  If this representation holds up, the point will be effectively stipulated or at least undisputed, and in that event the additional probative value of the 2017 reclassification will be minimal and significantly outweighed by the likelihood that the jury would treat it as an admission of misclassification in earlier years—and thus inadmissible.  If, however, there is waffling or resistance on this point by defendants' personnel who testify at trial, the Court reserves the right to revisit the issue of admissibility for an alternative purpose under Rule 407.

   e.  Defendants filed an additional motion asking to exclude summary charts that:  (a) total submitted and accepted contracts for 62 particular class members and list complaints made about them; (b) summarize the total earnings of class members

across the board; and (c) summarize what became of submitted contracts across the board. Plaintiffs say that they agree to the first request (item a), *see* Pls.' Resp. (dkt. no. 243) at 4, so the Court grants it.

The earnings charts (item b) is irrelevant and inadmissible for the reasons discussed above under heading 1a. The summary chart regarding submitted contracts (item c) is relevant, for the reasons discussed above under heading 1b. And it is not misleading or otherwise unfairly prejudicial. The column for "inactive" contracts, however, is misleading. As explained, this column represents contracts that actually were in effect at some point during the class period but later became inactive because, in most instances, the customer moved or changed providers. Such later developments have no bearing on whether there were completed contracts (i.e. "sales" that were "made"), and including a column on the chart that seems to treat them as something else is misleading. Plaintiffs must remove this column before they may use the exhibit.

## 2.     Plaintiffs' remaining motion

Plaintiffs have moved to bar defendants "from introducing evidence that the Plaintiff class members understood and agreed to be paid commission and not on an hourly basis." Pls.' Mot. (dkt. 29) at 1. They contend this would mislead the jury to believe they had waived their rights under the Illinois Minimum Wage Law, rights that are not legally waivable. Defendants say this do not intend to offer this evidence to suggest waiver. But they want to introduce the agreements class members signed when they went to work for Just Energy, as these agreements detailed their job duties and is relevant to show what they understood those duties to be.

The Court agrees with defendants that the agreements are relevant and

admissible for the purposes they identify.  The fact that the agreements contain an undertaking to be paid on a commission basis is insufficient to render the exhibits misleading or unfairly prejudicial and therefore inadmissible.

Plaintiffs are entitled to an instruction, however, that will advise the jury that the fact that the agreements provided for payment on a commission basis is irrelevant and may not be considered regarding whether the outside salesperson exemption applies. The Court expects plaintiffs to draft an appropriate instruction, provide it to defendants for review, and provide a proposal to the Court at the outset of trial so that the Court may read it to the jury at an appropriate point before, during, and/or at the end of the trial.

Date:  August 4, 2019

_____
MATTHEW F. KENNELLY
United States District Judge